# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PFIZER INC., WYETH LLC, PFIZER PHARMACEUTICALS LLC, PF PRISM C.V. and PFIZER MANUFACTURING HOLDINGS LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 15-26 (SLR) (SRF) |
| MYLAN INC., MYLAN LABORATORIES LIMITED and MYLAN PHARMACEUTICALS INC., | ) ) ) ) ) | REDACTED - PUBLIC VERSION |
| Defendants. | ) | |

**REQUEST FOR INTERNATIONAL JUDICIAL
ASSISTANCE PURSUANT TO THE HAGUE CONVENTION
OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE
ABROAD IN CIVIL OR COMMERCIAL MATTERS**

The United States District for the District of Delaware presents its compliments to the

Directorate of Courts of India, and respectfully requests international judicial assistance in

accordance with the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in

Civil or Commercial Matters ("Hague Convention") to obtain evidence to be used in the above-

captioned judicial proceeding.  Specifically, this Court requests that the Directorate of Courts of

India, by the proper and usual process of your Courts, direct ███████████████████

███████████████████████████████████ to produce the

documents identified below, and to designate a person to provide a deposition to give testimony

regarding the subjects identified below.

Based on the representations made by Defendants Mylan Inc., Mylan Laboratories

Limited, and Mylan Pharmaceuticals, Inc. (collectively "Mylan" or "Defendants"), this Court

believes that ███████████████ possesses documents and information that is relevant

for the proper adjudication of the above-captioned matter.  This Court also believes that assistance from the Directorate of Courts of India would serve to further the international interests of justice and judicial cooperation.  The documents requested by Plaintiffs in this action are set forth in Schedule A.  The topics of oral testimony requested by Plaintiffs in this action are set forth in Schedule B.

In conformity with Article 3 of the Hague Convention, the undersigned applicant has the honor to submit the following request.  If the Indian Authority requires additional information, please contact the applicant's Indian counsel, Mr. Pravin Anand, Mr. Achuthan Sreekumar, and Mr. Himanshu Kane, whose contact information appears in Section 3(a) below.

| | | |
|---|---|---|
| 1. | *Sender:* | Office of the Clerk of the Court<br>United States District Court for the District of Delaware<br>844 N. King Street, Unit 18<br>Wilmington, DE  19801-3570<br>USA<br>Telephone: (302) 573-6170 |
| 2. | *Central Authority of the Requested State:* | Central Authority<br>The Ministry of Law and Justice<br>Department of Legal Affairs<br>4th Floor, A-Wing, Shastri Bhavan<br>New Delhi<br>110 001 India<br>Telephone: +91 (11) 2338 7557<br>Fax: +91 (11) 2338 4241<br>E-mail: Judicial-dla@nic.in |
| | | The Registrar General<br>Bombay High Court,<br>Fort, Mumbai -32<br>India<br>E-mail: hcbom.mah@nic.in |
| 3. | *Person to whom the executed Request is to be returned:* | Thomas H. L. Selby<br>Williams & Connolly LLP<br>725 Twelfth St., N.W.<br>Washington, DC  20005 |

USA
Telephone: (202) 434-5066

4.   *Requesting Judicial Authority:*   The Honorable Sherry R. Fallon
United States Magistrate Judge
United States District Court for the District of Delaware
844 N. King Street
Wilmington, DE  19801-3570
USA

5.   *To the Competent Authority of:*   Central Authority
The Ministry of Law and Justice
Department of Legal Affairs
4th Floor, A-Wing, Shastri Bhavan
New Delhi
110 001 India
Telephone: +91 (11) 2338 7557
Fax: +91 (11) 2338 4241
E-mail: Judicial-dla@nic.in

6.   *The names and addresses of the parties and their representatives:*

A.   Plaintiffs:                   Parties

Pfizer Inc.
235 East 42nd St.
New York, NY  10017

Wyeth LLC
5 Giralda Farms
Madison, NJ  07940

Pfizer Pharmaceuticals LLC
Bo. Carmelitas
Road 689
Km 1.9
Vega Baja, Puerto Rico 00693

PF Prism C.V.
Blaak 40 basement
3011 TA
Rotterdam, Netherlands

Pfizer Manufacturing Holdings LLC
235 East 42nd St.
New York, NY  10017

<u>Representatives</u>

Thomas H. L. Selby
Adam D. Harber
Galina I. Fomenkova
Martha C. Kidd
Williams & Connolly LLP
725 Twelfth St. NW
Washington, DC  20005
USA

Jack B. Blumenfeld
Maryellen Noreika
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market St.
P.O. Box 1347
Wilmington, DE  19899
USA

Mr. Pravin Anand
Anand and Anand
Plot No. 17A, Sector 16A
Film City, Noida-201 301 (U.P.)
India

Mr. Achuthan Sreekumar
Anand and Anand
Plot No. 17A, Sector 16A
Film City, Noida-201 301 (U.P.)
India

Mr. Himanshu Kane
Managing Partner
W.S. Kane and Co.
Advocates, Solicitors and Notary,
6th Floor, Merchant Chamber,
Opp. Patkar Hall,
New Marine Lines,
Mumbai 400020
India

B.    Defendants:              <u>Parties</u>

Mylan Inc.
1000 Mylan Boulevard
Canonsburg, Pennsylvania 15317

4

Mylan Pharmaceuticals Inc.
781 Chestnut Ridge Road
Morgantown, West Virginia 26505

Mylan Laboratories Limited
Strides House
Opp. To IIM,
Bilekalli
Bannerghatta Road
Bangalore – 560 076
Karnataka
India

Representatives

Timothy H. Kratz
Karen L. Carrol
Michael L. Binns
MCGUIREWOODS LLP
1230 Peachtree Street N.E., Suite 2100
Atlanta, GA 30309-3534
USA

Cedric C. Y. Tan
MCGUIREWOODS LLP
2001 K Street N.W., Suite 400
Washington, D.C. 20006-1040
USA

Christine I. Nam
MCGUIREWOODS LLP
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
USA

Richard L. Horwitz
David E. Moore
Bindu A. Palapura
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
USA

**7.** *Nature and purpose of the proceedings and summary of facts:*

<u>Nature of the action</u>

Plaintiffs manufacture and sell Tygacil®, a tetracycline-class antibacterial drug indicated for the treatment of infections caused by susceptible isolates of certain microorganisms.  The active ingredient in Tygacil® is a compound known as tigecycline.  Among other things, Tygacil® is useful for the treatment of infections that have shown resistance to other antibiotics and antibacterial drugs.  Tygacil® is protected by various patents including U.S. Patent Nos. 7,879,828 (the "'828 patent") and 8,372,995 (the "'995 patent").

This civil action arises under the patent laws of the United States.  On January 8, 2015, Plaintiffs filed this action against Defendants Mylan Inc., Mylan Pharmaceuticals Inc., and Mylan Laboratories Limited (collectively "Mylan" or "Defendants") in the United States District Court for the District of Delaware.  Plaintiffs allege infringement of the '828 patent and the '995 patent, which relate to drug formulations including tigecycline and crystalline forms of tigecycline (as well as processes for producing such compounds), respectively.  Pfizer alleges, *inter alia*, that the submission by Mylan of Abbreviated New Drug Application No. ███ for Tigecycline for Injection ("ANDA Product") constitutes an act of patent infringement with respect to each of the Patents-in-suit under 35 U.S.C. § 271(e)(2)(A).  Pfizer further alleges, *inter alia*, that the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of Mylan's ANDA Product would infringe one or more claims of each of the Patents-in-suit.  More specifically, Pfizer asserts that the following infringe one or more of the asserted claims of the Patents-in-suit:  The tigecycline IV infusion, 50 mg/vial product that is the subject of ANDA No. ███, the processes used to make the tigecycline IV infusion, 50 mg/vial product that is the subject of ANDA No. ███, and any other materials, intermediate or otherwise, produced by the processes used to make the tigecycline IV infusion, 50 mg/vial product that is the subject of ANDA No. ███.

In defense of the allegations of infringement, Mylan has asserted that the Patents-in-suit are invalid and/or not infringed.

Discovery regarding the tigecycline used by Mylan in Mylan's ANDA Product, including the method by which it is manufactured, data regarding production batches of tigecycline, and data regarding intermediate chemical entities, structures, and/or polymorphs that may be formed during the production of the tigecycline used by Mylan in Mylan's ANDA Product, is relevant for Plaintiffs to prove infringement of at least some of the asserted claims of the Patents-in-suit.  However, Mylan itself does not manufacture the tigecycline used in its ANDA Product.  Instead, the documents list Indian company ███████ as the manufacturer of the tigecycline used in Mylan's ANDA Product.  Accordingly, Pfizer believes that ███████ possesses information and documents relating to the tigecycline used in Mylan's ANDA Product that is relevant to prove infringement of at least some of the asserted claims in this case.

<u>The parties</u>

The Plaintiffs are:

1. Pfizer Inc., a corporation organized and existing under the laws of Delaware;

2. Wyeth LLC, a limited liability company organized and existing under the laws of Delaware.  Wyeth LLC's sole member is Pfizer Inc.;

3. Pfizer Pharmaceuticals LLC, a limited liability company organized and existing under the laws of Delaware.  Pfizer Pharmaceuticals LLC is a wholly-owned subsidiary of PF Prism C.V.;

4. PF Prism C.V., a limited partnership (*commanditaire vennootschap*) organized and existing under the laws of the Netherlands, and registered at the trade register held by the Chamber of Commerce in Rotterdam, the Netherlands, under number 51840456.  PF Prism C.V. is the holder of New Drug Application No. 21821, which has been approved by the FDA;

5. Pfizer Manufacturing Holdings LLC, a limited liability company organized and existing under the laws of Delaware.   Pfizer Manufacturing Holdings LLC is a general partner of PF Prism C.V.

The Defendants are:

1. Mylan Inc., a corporation organized and existing under the laws of the Commonwealth of Pennsylvania.

2. Mylan Laboratories Limited, a corporation organized and existing under the laws of India.  Mylan Laboratories Limited is a wholly owned subsidiary of Mylan Inc.

3. Mylan Pharmaceuticals Inc., a corporation organized and existing under the laws of the State of West Virginia.  Mylan Pharmaceuticals Inc. is a wholly owned subsidiary of Mylan Inc.

Summary of the proceedings

Fact discovery has commenced and the production of documents was required to be substantially completed in December 2015, while the completion of all fact discovery (including depositions) is scheduled for April 15, 2016.  Trial of this action has been scheduled to commence on December 2, 2016.

**8.**    ***Evidence to be obtained or other judicial act to be performed:***

This Request is being made to secure documents and testimony from ██████████████ for use at trial in the above-captioned matter.

**9.**    ***Identity and address of any person to be examined:***

Any representative of ████████████████ who will be authorized and in a position to provide documents and give oral testimony as sought in Schedules A and B to the instant Letter of Request.

The address of ████████████████ is as follows:

Documents are also requested from any other office or location where ████████████ ████████ would have stored the documents requested in Schedule A.

**10.   *Questions to be put to the persons to be examined or statement of the subject matter about which they are to be examined:***

Please see attached <u>Schedule B</u>.  Plaintiffs expressly reserve the right to add to Schedule B upon the receipt of the documents requested in Schedule A, as those documents may elucidate subject matter about which trial testimony is needed.

**11.   *Documents or other property to be inspected:***

Please see attached <u>Schedule A</u>.

**12.   *Any requirement that the evidence be given on oath or affirmation and any special form to be used:***

Plaintiffs respectfully request that the representative of ██████████████ be examined under oath or affirmation, or, in the alternative, should be instructed of the consequences of giving untruthful and false answers under the laws of India.  Plaintiffs further request that any exhibits to the depositions be marked and attested to.

Plaintiffs request that any Local Commissioners, stenographers, audio/video recording personnel, or other support staff required to carry out the task of recording the testimony or completing the process be permitted to participate as necessary.

**13.   *Special methods or procedure to be followed:***

Plaintiffs respectfully request as follows:

a.   That the testimony of the witnesses be taken according to United States practice, i.e., having the witnesses' oral testimony recorded by stenographic means, and that transcripts be promptly made and authenticated in accordance with the procedure in India, and additionally that the parties be permitted to videotape the examinations;

b.      That the representative of ████████████████████ be permitted to review the subject matter of the examination (Schedule B) at least seven days in advance of the deposition;

c.      That Plaintiffs' representative be permitted to ask questions on the topics described in Schedule B for a total of fifteen hours for the ████████████████ witness;

d.      That the representatives mentioned for the parties be permitted to attend the taking of the testimony of the witnesses and to ask questions of the witnesses (through the appointment of an interpreter, if necessary);

e.      That any Local Commissioners, stenographers, audio/video recording personnel, or other support staff required to carry out the task of recording the testimony or completing the process be permitted to participate as necessary;

f.      That the witnesses produce documents in their possession, custody, or control, as described in Schedule A, four weeks prior to the deposition at a time and place to be fixed by Directorate of Courts, with the Plaintiffs' representatives being allowed an opportunity to inspect and copy these documents.  Documents designated by the witnesses as "Confidential" shall be protected from disclosure to others subject to the terms of the Court's Protective Order, which is attached hereto as Exhibit 1;

g.      That the appointed Indian Court or appropriate personnel forward the records of the testimony and/or any digital copies of the proceedings for use in this action to the representatives indicated in Paragraph 6 above at the addresses listed.

**14.   *Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified:***

Please notify the following persons once the Request has been executed, when and where the requested documents are ready to be produced, and when and where the examination is to be conducted:

Thomas H. L. Selby
Williams & Connolly LLP
725 Twelfth St. NW
Washington, DC  20005

**15.   *The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by:***

Pfizer Inc., c/o
Thomas H. L. Selby
Williams & Connolly LLP
725 Twelfth St. NW
Washington, DC  20005

Dated: _____                                    _____
                                                        The Honorable Sherry R. Fallon
                                                        United States Magistrate Judge
                                                        United States District Court for the
                                                        District of Delaware

## SCHEDULE A—CATEGORIES OF DOCUMENTS REQUESTED

## DEFINITIONS

1.      "Document" refers to all "documents" and all "electronically stored information," giving those terms the broadest meaning provided by Rule 34 of the Federal Rules of Civil Procedure, and includes, without limitation, all drafts and non-identical copies of documents, and all metadata.

2.      As used herein, "tigecycline" shall mean the compound tigecycline, or any salt form of the compound, or any solvate of any of the aforementioned, or any polymorph of any of the aforementioned, or any other form of the aforementioned, or any mixture of two or more of the aforementioned, and includes but is not limited to the active pharmaceutical ingredient (API) in Tygacil®.

3.      As used herein, "test" or "testing" shall be construed to include but not be limited to any test, analysis, evaluation, comparison, study, experiment, or trial for any purpose, including *in vitro*, *in vivo*, and clinical tests and results, whether published or unpublished.

4.      As used herein, "IR" means infrared spectroscopic analysis of any kind.

5.      As used herein, "NMR" means nuclear magnetic resonance spectroscopic analysis of any kind.

6.      As used herein, "XRD" shall mean X-ray powder diffraction.

7.      As used herein, "DSC" shall mean differential scanning calorimetry.

8.      As used herein, "Mylan" shall mean Mylan Inc., Mylan Laboratories Limited, Mylan Pharmaceuticals Inc., any of their past or present affiliates, agents, contractors, consultants, directors, divisions, employees, investors, officers, parent companies, predecessors or successors-in-interest, shareholders, subsidiaries, or any joint venture to which Mylan may be

a party, including any person or entity who served in any such capacity at any time.

9.    As used herein, "███████" shall mean ██████████████████, any of its past or present affiliates, agents, contractors, consultants, directors, divisions, employees, investors, officers, parent companies, predecessors or successors-in-interest, shareholders, subsidiaries, or any joint venture to which ███████ may be a party, including any person or entity who served in any such capacity at any time.

10.    As used herein, "'995 patent" means United States Patent No. 8,372,995.

11.    As used herein, the phrase "Mylan's ANDA Product" refers to any product described in Abbreviated New Drug Application ("ANDA") No. ███████, as well as the active pharmaceutical ingredient drug substance(s) identified therein.

12.    As used herein, "Mylan's Tigecycline API" refers to the tigecycline active pharmaceutical ingredient in Mylan's ANDA Product.

## DOCUMENT REQUESTS

1.    A complete copy of Drug Master File No. ███████.

2.    Manufacturing batch records for any tigecycline manufactured by ███████ for use in connection with Mylan's ANDA Product.

3.    Documents concerning the '995 patent, any foreign counterpart thereof, and/or any patent or application that claims priority to the '995 patent or to Provisional Application No. 60/684,955.

4.    Communications between ███████, Mylan, and/or any related entity that refer or relate to DMF No. ███████, tigecycline, and/or any product containing tigecycline.

5.    All agreements, whether formal or informal, between ███████ and any of Mylan, and/or any of their officers, directors, employees, divisions, parent companies, subsidiaries,

affiliates, and/or predecessors or successors-in-interest, that refer or relate to DMF No. ███,

tigecycline, and/or any product containing tigecycline.

6.   Documents that refer or relate to the polymorphic and/or amorphous form(s) of
Mylan's Tigecycline API or any intermediate produced in the manufacture thereof.

7.   All test data regarding the polymorphic and/or amorphous form(s) of Mylan's
Tigecycline API and/or any intermediate produced during the manufacture thereof, including but
not limited to IR, NMR, XRD, DSC, and melting point data.

8.   Reports, memoranda, and lab notebooks regarding the research and development of
the manufacturing process described in DMF No. ███.

9.   Ten grams of Mylan's Tigecycline API.

10.   Samples of any intermediate products or compositions produced during the process
described in DMF No. ███, to the extent any already exist.  If no responsive materials
currently exist but are created in the future, they shall be preserved and Plaintiffs shall be
notified at the time that such materials are created.

11.   Documents that refer or relate to the ███████████ United States Food and
Drug Administration's inspection of ███████ pharmaceutical manufacturing facility located at
████████████████████████████████████████, including but
not limited to the reasons for the inspection, the findings of that inspection, and any actions taken
by ███████ or the FDA as a result of or in response to that inspection.

12.   Documents that refer to relate to any alleged or potential deviations by ███████
from the U.S. Food and Drug Administration's current good manufacturing practice for the
manufacture of active pharmaceutical ingredients, including but not limited to, (1) failures to
document production and analytical testing activities at the time they are performed; (2) failures

to prevent unauthorized access or changes to data and to provide adequate controls  to prevent omission of data; (3) failures to maintain complete data derived from all testing, and to ensure compliance with established specifications and standards; and/or (4) failures to properly maintain buildings and facilities used in the manufacture of intermediates and APIs in a clean condition.

**SCHEDULE B—SUBJECT MATTER OF WITNESS EXAMINATION**

**DEFINITIONS**

1.    As used herein, "tigecycline" shall mean the compound tigecycline, or any salt form of the compound, or any solvate of any of the aforementioned, or any polymorph of any of the aforementioned, or any other form of the aforementioned, or any mixture of two or more of the aforementioned, and includes but is not limited to the active pharmaceutical ingredient (API) in Tygacil®.

2.    As used herein, "test" or "testing" shall be construed to include but not be limited to any test, analysis, evaluation, comparison, study, experiment or trial for any purpose, including *in vivo*, *in vitro*, and clinical tests and results, whether published or unpublished.

3.    As used herein, "IR" means infrared spectroscopic analysis of any kind.

4.    As used herein, "NMR" means nuclear magnetic resonance spectroscopic analysis of any kind.

5.    As used herein, "XRD" shall mean X-ray powder diffraction.

6.    As used herein, "DSC" shall mean differential scanning calorimetry.

7.    As used herein, "Mylan" shall mean Mylan Inc., Mylan Pharmaceuticals Inc., and/or Mylan Laboratories Limited, any of their past or present affiliates, agents, contractors, consultants, directors, divisions, employees, investors, officers, parent companies, predecessors or successors-in-interest, shareholders, subsidiaries, or any joint venture to which Mylan may be a party, including any person or entity who served in any such capacity at any time.

8.    As used herein, "█████" shall mean ██████████████, any of its past or present affiliates, agents, contractors, consultants, directors, divisions, employees, investors, officers, parent companies, predecessors or successors-in-interest, shareholders, subsidiaries, or

any joint venture to which ███ may be a party, including any person or entity who served in any such capacity at any time.

9.   As used herein, "'995 patent" means United States Patent No. 8,372,995.

10.   As used herein, the phrase "Mylan's ANDA Product" refers to any product described in Abbreviated New Drug Application ("ANDA") No. ███, as well as the active pharmaceutical ingredient drug substance(s) identified therein.

11.   As used herein, "Mylan's Tigecycline API" refers to the tigecycline active pharmaceutical ingredient in Mylan's ANDA Product.

12.   As used herein, the phrase "Mylan's Notice Letter" refers to the Notice Letter sent pursuant to 21 U.S.C. § 355(j)(2)(B)(i) and (ii) from Mylan to Pfizer Inc. on or about November 26, 2014, as well as any attachments thereto.

## SUBJECTS OF TESTIMONY REQUESTED

1.   The documents produced by ███ in response to the Letter of Request, including their authenticity, circumstances of creation and retention, and subject matter.

2.   ███ knowledge of or involvement with (i) ANDA No. ███, (ii) Mylan's ANDA Product, (iii) DMF No. ███, (iv) Mylan's Tigecycline API, (v) Tygacil®, (vi) a generic version of Tygacil®, and/or (vii) Mylan's Notice Letter.

3.   All communications between ███, Mylan, and/or any related entity that refer or relate to DMF No. ███, tigecycline, and/or any product containing tigecycline.

4.   ███ knowledge of the '995 patent, any foreign counterpart thereof, and/or any patent or application that claims priority to the '995 patent or to Provisional Application No. 60/684,955.

5.   The synthesis, production, manufacture, formulation, development, transfer,

processing, storage, and specifications of Mylan's Tigecycline API, including but not limited to any starting compound, precursor, intermediate, or other compound or reagent used or produced in the synthesis or manufacture of tigecycline.

6.     Testing by ███████ of tigecycline or any product containing tigecycline, including but not limited to any comparison or comparative test of Mylan's Tigecycline API with any other tigecycline-containing product.

7.     The solid state properties of tigecycline in advance of, during, or after development of the DMF process, including but not limited to the stability of particular tigecycline polymorphs and/or the conversion of amorphous or crystalline tigecycline to any other polymorphic form of tigecycline, conditions under which such conversion occurs, and analytical data related to such conversions.

8.     Test data regarding the polymorphic and/or amorphous form(s) of the Mylan's Tigecycline API or any intermediate produced during the manufacture thereof, including but not limited to IR, NMR, XRD, DSC, and melting point data.

9.     The stability or instability of, or changes over time in, the polymorphic and/or amorphous form(s) of Mylan's Tigecycline API or any intermediate produced during the manufacture thereof.

10.     The conditions in which Mylan's Tigecycline API or any intermediates produced during the manufacture thereof are created, maintained, or stored.

11.     The production of tigecycline, dosage forms containing tigecycline, and/or the crystallization of tigecycline, including but not limited to processes for the production of tigecycline, tigecycline dosage forms, or tigecycline crystals manufactured by ███████ supplied to Mylan or any related entity, or otherwise used in connection with Mylan's ANDA Product.

13.    The ███████████ United States Food and Drug Administration's inspection of ██████ pharmaceutical manufacturing facility located at ██████████████ ████████████████████████████, including but not limited to the reasons for the inspection, the findings of that inspection, and any actions taken by ████████ or the FDA as a result of or in response to that inspection.

14.    Any alleged or potential deviations by ████████ from the U.S. Food and Drug Administration's current good manufacturing practice for the manufacture of active pharmaceutical ingredients, including but not limited to, (1) failures to document production and analytical testing activities at the time they are performed; (2) failures to prevent unauthorized access or changes to data and to provide adequate controls to prevent omission of data; (3) failures to maintain complete data derived from all testing, and to ensure compliance with established specifications and standards; and/or (4) failures to properly maintain buildings and facilities used in the manufacture of intermediates and APIs in a clean condition.

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PFIZER INC., WYETH LLC, PFIZER PHARMACEUTICALS LLC, PF PRISM C.V. and PFIZER MANUFACTURING HOLDINGS LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 15-26 (SLR) (SRF) |
| MYLAN INC., AGILA SPECIALTIES PRIVATE LTD., and MYLAN PHARMACEUTICALS INC., | ) ) ) | |
| Defendants. | ) ) | |

## STIPULATED PROTECTIVE ORDER

WHEREAS, discovery in the above-entitled action ("Action") may involve the disclosure of certain documents, things and information in the possession, custody or control of Plaintiffs Pfizer Inc., Wyeth LLC, Pfizer Pharmaceuticals LLC, PF PRISM C.V., and Pfizer Manufacturing Holdings LLC; Defendants Mylan Inc., Agila Specialties Private Ltd., and Mylan Pharmaceuticals Inc.; or non-parties that constitute or contain trade secrets or other confidential research, development or commercial information within the meaning of Rule 26(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and as further set forth below;

WHEREAS, the parties, through counsel, stipulate to the entry of this Protective Order to prevent unnecessary dissemination or disclosure of such confidential information; and

WHEREAS, the parties, through counsel, stipulate that good cause exists for the entry of this Protective Order pursuant to Fed. R. Civ. P. 26(c) to protect against improper disclosure or use of confidential information produced or disclosed in this case.

IT IS HEREBY STIPULATED AND AGREED, SUBJECT TO THE APPROVAL AND ORDER OF THE COURT, as follows:

1

1.    **Scope of Protective Order**.  This Protective Order shall apply to all information, documents and things produced or within the scope of discovery in this Action, including, without limitation, all testimony adduced at depositions, documents or things produced in response to requests for the production of documents and things, answers to interrogatories, responses to requests for admission and all other discovery taken pursuant to the Federal Rules of Civil Procedure, as well as hearing or trial transcripts, matters in evidence, and any other information furnished, directly or indirectly, by or on behalf of any party to this Action or any THIRD PARTY to the extent such material is designated "CONFIDENTIAL INFORMATION" in accordance with ¶ 2 of this Protective Order.

This Protective Order shall also govern any designated record of information produced in this action pursuant to required disclosures under any federal procedural rule or District of Delaware local rule, and any supplementary disclosures thereto.

2.    **Definitions**.  The terms "CONFIDENTIAL INFORMATION" and "THIRD PARTY" or "THIRD PARTIES," as used herein, shall mean the following:

a.              "CONFIDENTIAL INFORMATION" means all information, in any form, that constitutes "a trade secret or other confidential research, development or commercial information" within the meaning of Fed. R. Civ. P. 26(c)(1) and includes all information that is not generally known to public or to competitors and that relates to product research, product development, product manufacturing, financial performance (whether historical or future), marketing, sources of supply, or strategic planning.  The designation of "CONFIDENTIAL INFORMATION" by the producing party constitutes a representation of that party that it reasonably and in good faith believes that the designated material constitutes, contains, reveals, relates to, or reflects its trade secrets or other confidential research, development, or commercial information within the meaning of Fed. R. Civ. P.

2

26(c).

      b.     "THIRD PARTY" or "THIRD PARTIES" means any person or entity who is not a named party in this Action.

    3.    **THIRD PARTIES under the Protective Order**.  If a THIRD PARTY provides discovery to any party in connection with this Action, and if the THIRD PARTY so elects, then the provisions of this Protective Order shall apply to such discovery and the parties will treat all information that is produced by such THIRD PARTY in accordance with the terms of this Protective Order to the extent it is designated as CONFIDENTIAL INFORMATION.  Under such circumstances, the THIRD PARTY shall have the same rights and obligations under this Protective Order as held by the parties to this Action. Because third parties may be requested to produce documents containing information that a party considers CONFIDENTIAL, at the request of any party all documents produced by a third party in this action shall be treated as if designated CONFIDENTIAL hereunder for a period of seven (7) days after production in order to allow the parties time to review the documents and make any appropriate designations hereunder.

    4.    **Designation.**  Each party shall have the right to designate information as CONFIDENTIAL, subject to this Protective Order.  To the extent that material is designated CONFIDENTIAL, such material shall only be revealed to or used by limited categories of individuals, as provided for herein, and shall not be communicated in any manner, either directly or indirectly, to any person or entity except as provided herein.  Any copies of such material, abstracts, summaries or information derived therefrom, and any notes or other records regarding the contents thereof, shall also be deemed CONFIDENTIAL, and the same terms regarding confidentiality of these materials shall apply as apply to the originals.  The procedures for designating materials as CONFIDENTIAL are as follows:

3

a.        **Designation of Documents and Things**.  The parties and any THIRD PARTIES shall label or mark each page of each document and thing that constitutes or contains CONFIDENTIAL INFORMATION with the legend "CONFIDENTIAL," or otherwise mark or designate in writing the materials as CONFIDENTIAL INFORMATION and subject to the Protective Order when the document or thing is produced to the receiving party.  Anything that cannot be so marked shall be designated by placing the appropriate legend on a container or package in which the thing is produced or on a tag attached thereto.  Each page of each document and each thing produced pursuant to discovery in this Action shall also bear a unique identifying number.

Documents and things produced without a legend designating the material CONFIDENTIAL shall not be subject to this Protective Order unless otherwise agreed by the parties, ordered by the Court, or otherwise designated CONFIDENTIAL INFORMATION in accordance with the provision of ¶ 9 of this Protective Order. Inspection of documents or things by any party shall be conducted by persons eligible under ¶ 13 below.  Such persons shall initially treat all information obtained during or from any inspection as containing CONFIDENTIAL INFORMATION until such time as copies of documents or things from the inspection are produced, and, thereafter, such produced documents and things shall be treated in accordance with any confidentiality designation appearing on the document or thing at the time of its production.

Documents and things produced or made available for inspection may be subject to redaction, in good faith by the producing party, of CONFIDENTIAL INFORMATION that is neither relevant to the subject of this litigation nor reasonably calculated to lead to the discovery of admissible evidence, or is subject to the attorney-client privilege or to work-product immunity.  Each such redaction, regardless of size, shall be clearly labeled.

4

This Paragraph shall not be construed as a waiver of any party's right to seek disclosure of redacted information.  All documents redacted based on attorney-client privilege or work-product immunity shall be listed on a privilege log in accordance with Federal Rule of Civil Procedure 26(b)(5) and exchanged at a mutually agreeable date and time.

b.  **Designation of Interrogatories, Requests for Admission and Written Testimony**.  Any response to written interrogatories or requests for admission or any testimony adduced at a deposition upon written questions (or any portion of any of the foregoing) that constitutes or contains CONFIDENTIAL INFORMATION shall be labeled or marked by the party providing the response or testimony as follows:  (i) the specific pages or portions of pages containing CONFIDENTIAL INFORMATION shall be marked CONFIDENTIAL, and (ii) the first page of that document near the caption shall be marked with the legend "CONFIDENTIAL" to provide notice that the document contains CONFIDENTIAL INFORMATION.  Responses or testimony served without these legends shall not be CONFIDENTIAL INFORMATION subject to this Protective Order unless otherwise agreed by the parties or ordered by the Court, or designated CONFIDENTIAL INFORMATION in accordance with the provisions of ¶ 9 of this Protective Order.

c.  **Designation of Deposition Transcripts.**  Deposition transcripts containing CONFIDENTIAL INFORMATION may be designated as subject to this Protective Order either on the record during the deposition or by providing written notice within sixty (60) days following receipt of the official transcripts of the deposition.

All deposition transcripts not previously designated shall be deemed to be, and shall be treated as CONFIDENTIAL for a period of sixty (60) days after receipt of the official transcript of the deposition, and the transcript shall not be disclosed during such

5

time by a non-designating party to persons other than those persons qualified to receive

such information pursuant to this Protective Order.  After sixty (60) days, the

aforementioned testimony shall no longer be treated as Protected Information, unless one

or both of the parties has designated specific portions of the testimony as such or unless

the parties otherwise agree.  The parties agree to mark at least the first page of all copies of

deposition transcripts that contain testimony, or that append exhibits, designated as

CONFIDENTIAL with the legend "CONFIDENTIAL INFORMATION" and to provide

each other notice of which portions of the deposition transcript contain CONFIDENTIAL

INFORMATION.  This paragraph does not limit any party's right to challenge any

presumptive designation or preclude a producing party from designating testimony or

transcripts as CONFIDENTIAL INFORMATION.

       d.  **Designation of Hearing Testimony or Argument.**  With respect to

testimony elicited during hearings and other proceedings, whenever counsel for any

party deems that any question or line of questioning calls for the disclosure of

CONFIDENTIAL INFORMATION, counsel may designate on the record prior to

such disclosure that the disclosure is subject to confidentiality restrictions.  Whenever

matter designated CONFIDENTIAL INFORMATION is to be discussed in a hearing

or other proceeding, any party claiming such confidentiality may ask the Court to

have excluded from the hearing or other proceeding any person who is not entitled

under this Order to receive information so designated.

    5.    **Limitations on Attendance at Depositions**.  Counsel for a producing party may

request that all persons other than the witness, counsel for the witness (who signs the

Undertaking attached as Exhibit A if a non-party witness), the court reporter, those individuals

specified in ¶ 13, as applicable, and counsel for the witness (if a non-party witness whose counsel

does not sign the Undertaking) leave the deposition room during the portion of the deposition that inquires about or discloses subject matter that counsel for the producing party believes to be CONFIDENTIAL INFORMATION  hereunder.  If individuals other than those specified in the previous sentence fail to leave the deposition room during any portion of the deposition that inquires about or discloses what counsel for the producing party believes to be CONFIDENTIAL INFORMATION, counsel for the producing party may seek relief from the appropriate Court and, pending resolution of its request for relief, instruct the witness not to answer questions relating to, or limit disclosure of, the CONFIDENTIAL INFORMATION at issue.

6.      **Limitations on Attendance at Hearings or Trial.**  Counsel shall confer with the Court regarding procedures to protect the confidentiality of any material marked, labeled, or otherwise designated CONFIDENTIAL INFORMATION that a party or any of its witnesses may use, refer to, disclose, or admit into evidence during trial or any hearing in this Action. Unless the Court orders otherwise, attendance at a hearing or at a trial session in this Action at which material designated CONFIDENTIAL INFORMATION will be used or disclosed shall be limited for the time period during which CONFIDENTIAL INFORMATION will be used or disclosed to individuals entitled to have access to such materials under the terms of this Protective Order.

7.      **Proper Use and Disclosure of Designated Information.** Subject to the limitations and restrictions of this Protective Order and any further order regarding confidentiality that the Court may enter, material marked, labeled or otherwise designated CONFIDENTIAL INFORMATION as described in this Protective Order may be used to prepare for and conduct discovery, to prepare for trial and to support or oppose any motion in this Action, and may be used in testimony at trial, offered into evidence at trial and/or hearings on motions subject to such procedures mandated by the Court.  Nothing herein shall be

construed to affect in any way the admissibility of any document, testimony or other evidence at trial.

Material designated CONFIDENTIAL, and all information derived therefrom, shall be used only by persons permitted access to such information under this Protective Order, shall not be disclosed by the receiving parties to any party or person not entitled under this Protective Order to have access to such material, and shall not be used by the receiving parties for any purpose other than in connection with this action, including without limitation for any research, development, manufacture, patent prosecution, financial, commercial, marketing, regulatory, business, or other competitive purpose (except for settlement of the above-captioned case). Absent written consent of the producing parties or further order of this Court, all persons receiving information designated CONFIDENTIAL are expressly prohibited from using or disclosing such information in connection with any practice before or communication with (including, but not limited to, patent applications, citizens petitions, and other filings) the United States Patent and Trademark Office, the FDA, the United States Pharmacopoeia, or their counterpart organizations in any foreign jurisdiction.

8.      **Storage of CONFIDENTIAL INFORMATION**. The recipient of any CONFIDENTIAL INFORMATION shall maintain such information in a secure and safe area and shall exercise the same standard of due and proper care with respect to the storage, custody, use and/or dissemination of such information as is exercised by the recipient with respect to his/her/its own proprietary information.

9.      **Inadvertent Production of CONFIDENTIAL INFORMATION**. If a party inadvertently produces or provides discovery of any CONFIDENTIAL INFORMATION without labeling or marking it as provided in this Protective Order, the producing party may give written notice to the receiving party or parties, within ten (10) business days after becoming aware of the

inadvertent production, that the document, thing or other discovery information, response or testimony is CONFIDENTIAL INFORMATION and should be treated as such in accordance with the provisions of this Protective Order. The producing party will also provide copies of the properly marked information (*e.g.*, documents, discovery responses, transcripts, things, and/or all other information within the scope of this Protective Order).  Upon receipt of such notice and properly marked information, the receiving party or parties shall return or destroy said unmarked or incorrectly marked information to the extent practicable and not retain copies thereof, and shall undertake a best effort to correct any disclosure of such information contrary to the redesignation. Prior to receipt of such notice, disclosure of such documents, things, information, responses and testimony to persons not authorized to receive CONFIDENTIAL INFORMATION shall not be deemed a violation of this Protective Order.

10.  **Limitations on Advice to Clients**. It is understood that counsel for a party may give advice and opinions to his or her client based on his or her evaluation of designated CONFIDENTIAL INFORMATION received by the party, provided that such rendering of advice and opinions shall not reveal the content of such information, other than in summary form, except by prior written agreement with counsel for the producing party.

11.  **Discovery of THIRD PARTY Information**. A producing party may redact the CONFIDENTIAL INFORMATION of a THIRD PARTY that is in its possession where the producing party is under an obligation not to disclose such information, provided that the producing party shall identify the THIRD PARTY to the receiving party and shall not impede discovery by the receiving party from said THIRD PARTY.

12.  **Inadvertent Production of Privileged or Work Product Information**. Notwithstanding anything to the contrary in Fed. R. Civ. P. 26(b)(5)(B), the inadvertent production or disclosure of any document or tangible thing (including information) that should

9

have been withheld subject to a claim of attorney-client privilege or work product immunity, or other privilege or immunity, shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claims of privilege or work product immunity. In such an event, the producing party shall send to each receiving party a written request for return of the inadvertently produced or disclosed document or thing within a reasonably prompt period of time after becoming aware of such inadvertent or mistaken production.  Within five (5) business days of receiving a written request to do so from the producing party, the receiving party shall (a) return to the producing party any documents or tangible items that the producing party represents are covered by a claim of attorney-client privilege or work-product immunity, or other privilege or immunity, and were inadvertently or mistakenly produced and (b) destroy any extra copies or summaries of, or notes relating to, any such inadvertently or mistakenly produced information, including any electronic records thereof.  The receiving party shall not utilize the information contained in the inadvertently produced documents or things for any purpose, or disseminate or transmit such information.

      a.     If the receiving party wishes to contest that any such document or thing is protected from disclosure by the attorney-client privilege, work product immunity or other privilege or immunity from discovery, it shall so notify the producing party in writing when the document or thing is returned to the producing party ("Notice of Designation").

      b.     Within five (5) days after receiving a Notice of Designation, the producing party shall provide to the receiving party for each document or thing a description of the basis for the claim of privilege or immunity.

      c.     Within five (5) days after receiving such description, the receiving party may seek relief from the Court to compel production of such documents and things, the protection of which is still disputed, in accordance with the procedures set forth in the

10

Court's Scheduling Order for resolution of discovery disputes.  The party claiming the privilege or immunity shall have the burden of proving that such privilege or immunity exists.

      d.      With respect to documents and things subsequently generated by a receiving party, which documents and things contain information derived from such inadvertently produced documents and things, if the receiving party does not notify the producing party that the receiving party disputes the claims of attorney-client privilege or work-product immunity, or if the Court rejects any challenge by the receiving party to the privileged status of the inadvertent production, the receiving party shall either destroy the derivative documents and things or redact from them all such derivative privilege or work-product information in a manner such that the derivative information cannot in any way be retrieved or reproduced.

      e.      If, in a deposition, hearing, or other proceeding the party who made the inadvertent production or disclosure makes a request on or off the record for return of the inadvertently produced or disclosed document or thing within a reasonably prompt period of time after recognizing that the information has been produced or disclosed, all copies of the inadvertently produced or disclosed document or thing present at the deposition, hearing, or other proceeding shall immediately be sequestered and there shall be no further use of the inadvertently produced or disclosed document or thing.  For the avoidance of any dispute, the marking of an inadvertently produced or disclosed document or thing as an exhibit at deposition, hearing, or other proceeding has no bearing on the timeliness of the request for return.

      f.      The procedures set forth in this Paragraph for challenging the privileged status of an inadvertent production shall not result in any waiver of the attorney-client

privilege, the work product immunity, or any other privilege or immunity.

13.   **Access to CONFIDENTIAL INFORMATION.**  Material marked, labeled or otherwise designated CONFIDENTIAL INFORMATION as described in this Protective Order shall be deemed and treated as CONFIDENTIAL INFORMATION hereunder, unless and until the Court rules to the contrary, and access thereto or disclosure thereof shall be limited, unless and until the Court rules that there may be further disclosure, to the following individuals:

a.      Williams & Connolly LLP and Morris, Nichols, Arsht & Tunnell LLP, litigation counsel of record for Plaintiffs Pfizer Inc., Wyeth LLC, Pfizer Pharmaceuticals LLC, PF PRISM C.V., and Pfizer Manufacturing Holdings LLC (collectively, "Pfizer"), and their partners, associates, attorneys, data entry, information processing, computer support, artist, translating, stenographic, clerical, and paralegal employees or agents whose duties and responsibilities require access to material designated CONFIDENTIAL INFORMATION.

b.      Two (2) in-house counsel for Pfizer, who are designated as Jeff Rennecker, Esq., Assistant General Counsel, and Jeffrey Myers, Esq.  Pfizer represents that Mr. Rennecker and Mr. Myers do not, and will not for a period of one year following the final disposition of this litigation, have responsibility for business decisions involving product marketing or business strategy relating to tigecycline.  Notwithstanding the foregoing provisions, in-house counsel shall be permitted to advise Pfizer regarding legal strategy and the pending litigation; provided, however, that the CONFIDENTIAL INFORMATION is not thereby disclosed.

c.      McGuireWoods LLP and Potter Anderson & Corroon LLP, litigation counsel of record for Defendants Mylan Inc., Agila Specialties Private Ltd., and Mylan Pharmaceuticals Inc. (collectively "Mylan"), and their partners, associates, attorneys, data

entry, information processing, computer support, artist, translating, stenographic, clerical, and paralegal employees or agents whose duties and responsibilities require access to material designated CONFIDENTIAL INFORMATION.

d.       Two (2) in-house counsel for Mylan, who are designated as Thomas Jenkins, Esq., Vice-President and Assistant Global General Counsel, Patent Litigation, and Vinny Lee, Esq., In-house Counsel.  Mylan represents that Mr. Jenkins and Ms. Lee do not, and will not for a period of one year following the final disposition of this litigation, have responsibility for business decisions involving product marketing or business strategy relating to tigecycline.  Notwithstanding the foregoing provisions, in-house counsel shall be permitted to advise Mylan regarding legal strategy and the pending litigation; provided, however, that the CONFIDENTIAL INFORMATION is not thereby disclosed.

e.       Outside consultants or experts and their staffs retained by the parties or their attorneys for purposes of this action, who are not objected to pursuant to ¶ 14, and who first agree to be bound by the terms of this Protective Order;

f.       The Court before which this Action is pending and their authorized staff court reporters;

g.       Court reporters, videographers, and their respective staffs employed in connection with this action;

h.       Any interpreter, any typist or transcriber used by the interpreter who first agrees to be bound by the terms of this Protective Order;

i.       Non-parties specifically retained to assist outside counsel of record with copying and computer services necessary for document handling, other litigation support personnel (*e.g.*, graphic designers and animators, database entry personnel),

13

and other Third Party Vendors; and

   j.  Any other person as to whom the parties agree in writing.

  The individuals specified in ¶¶ 13(b), (d), and (j) who have received access to information designated CONFIDENTIAL by any party other than his or her client/employer shall not thereafter prosecute, supervise, or materially assist in the prosecution of any patent application (including both foreign and U.S.) that covers tigecycline (including compositions, methods, distribution methods, uses, or processes) for the length of this Action plus one (1) year after a final, non-appealable judgment in this Action.  For the avoidance of doubt, "prosecution" includes directly or indirectly drafting, amending, advising, or otherwise affecting the scope of the patents-in-suit, a continuation, a divisional, a continuation-in-part, a reissue patent, or a patent application that covers tigecycline, including through the use of any post-grant proceedings such as *Inter Partes* Review, *Ex Parte* Reexamination, Covered Business Method Review, or related appeals that involve "prosecution" as set forth above.  Nothing herein shall prohibit an individual from participating, supervising, or assisting with the practice before or communication with the United States Patent and Trademark Office with respect to an *Inter Partes* Review proceeding on behalf of the owner of the patent(s)-at-issue therein (or appeals therefrom), so long as that individual does not participate in any claim amendments.  Further, such individuals specified in ¶¶ 13(b), (d), and (j) shall not directly participate in or advise any FDA correspondence, including citizen petitions, relating to pharmaceutical products containing tigecycline for the length of this Action plus one (1) year after the final, non-appealable judgment in this Action.

  14.  **Retention of Experts and Outside Consultants**. Disclosure of CONFIDENTIAL INFORMATION shall not be made to any such outside consultant described in ¶ 13(e) for a period of seven (7) calendar days after serving the party providing discovery with a signed

Undertaking in the form of the annexed Exhibit A and a current curriculum vitae of the outside consultant.

15.     Counsel for the party providing discovery may, within the seven (7) calendar day period, serve a notice of objection if a reasonable basis for such objection exists.  If the notice is served, the CONFIDENTIAL INFORMATION will not be disclosed to such outside consultant. Within seven (7) calendar days after service of the objection, if the parties are unable to reach any agreement over the disclosure of CONFIDENTIAL INFORMATION to the expert or consultant, counsel for the objecting party may subsequently move the Court for an order denying disclosure of any CONFIDENTIAL INFORMATION to the outside expert or consultant as to which a notice of objection has been served.  If the objecting party files this motion, the CONFIDENTIAL INFORMATION shall not be disclosed to the outside expert or consultant until the Court rules or the parties agree that such disclosure may be made.  Failure to file such a motion within the seven calendar day period shall operate as a waiver of this objection, unless the parties agree in writing to extend this deadline while meeting and conferring regarding the objection.

16.     **Third Party Vendors**. Counsel may use the services of Third Party Vendors to provide services such as document review, electronic discovery support, computerized legal support, and management services for the purpose of encoding, loading into a computer and storing and maintaining for information control and retrieval purposes, transcripts of depositions, hearing, trials, pleadings, exhibits marked by any party, briefs and accompanying affidavits and appendices, documents produced by any party, or a party's own attorney work product, all of which may contain CONFIDENTIAL INFORMATION.  Such disclosure shall be made only on the following conditions:

a.     Counsel desiring to disclose CONFIDENTIAL INFORMATION to a vendor for the purposes of this Paragraph shall first obtain a signed Undertaking in the

15

form of the annexed Exhibit A, from a representative of the vendor who may receive

access to such material.  Counsel retaining the vendor shall retain the original of each

such signed Undertaking.  Service of the Undertaking shall not be required.

b.      The vendor shall return to the party's counsel or confirm destruction of

all copies of transcripts or other documents containing CONFIDENTIAL

INFORMATION within thirty (30) days of the conclusion of this Action, including any

Appeals.

17.      **Disclosure to Other Individuals**. Disclosure of CONFIDENTIAL

INFORMATION may be made to individuals not identified in ¶ 13, above, as follows:

a.      CONFIDENTIAL INFORMATION may be disclosed to any person not

otherwise identified in ¶ 13 above as agreed by the party that designated such information

CONFIDENTIAL.

b.      Any party may move the Court for an Order that a person not identified in ¶

13 above be given access to CONFIDENTIAL INFORMATION after first signing an

Undertaking in the form of Exhibit A attached hereto.  Counsel for the moving party shall

retain the original of each such signed Undertaking.  Service of the Undertaking shall not

be required.

c.      CONFIDENTIAL INFORMATION of a producing party may also be

disclosed to and/or used to examine, at deposition and at trial (or other court hearing): (i)

an individual who either prepared, received or reviewed the CONFIDENTIAL

INFORMATION prior to filing of this Action or previously had access or knowledge of

the CONFIDENTIAL INFORMATION, as demonstrated on the face of the

CONFIDENTIAL INFORMATION itself or by foundation testimony elicited during a

deposition or at trial; (ii) a currently employed officer, employee or expert of a producing

party, and/or; (iii) a witness designated for the producing party under Federal Rule 30(b)(6) concerning any topic to which the CONFIDENTIAL INFORMATION is relevant.

18.    **Confidentiality of Party's Own Documents.** A party may disclose or use in any manner or for any purpose, any information or documents from that party's own files that the party itself has designated CONFIDENTIAL INFORMATION.

19.    **Inadvertent Disclosure**. If  CONFIDENTIAL INFORMATION is disclosed or comes into the possession of any person not authorized to receive such information under this Protective Order, the party responsible for the disclosure shall: (a) within five (5) business days of becoming aware of such disclosure inform the designating party of all pertinent facts relating to such disclosure, including the identity of the person to whom the inadvertent disclosure was made; (b) use its best efforts to obtain the prompt return of the original and all copies of any such CONFIDENTIAL INFORMATION and to bind such unauthorized person or party to the terms of this Protective Order; (c) within three (3) business days of becoming aware of such disclosure, inform such unauthorized person or party of all provisions of this Protective Order; and (d) request such unauthorized person or party to sign the Undertaking in the form attached hereto as Exhibit A. The executed Undertaking shall be served upon counsel of record for the producing party within five (5) business days of its execution by the person or party to whom CONFIDENTIAL INFORMATION was disclosed.  The requirements set forth in this Paragraph shall not prevent the producing party from applying to the Court for further or additional relief.

20.    **Filing Under Seal**. Any information designated CONFIDENTIAL INFORMATION, if filed with the Court in connection with this Action, shall be filed under seal in accordance with the Local Rules or practice of the court in which the information is filed and shall be marked in the caption that the material is being filed under seal such as shown below:

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PFIZER INC., WYETH LLC, PFIZER PHARMACEUTICALS LLC, PF PRISM C.V., and PFIZER MANUFACTURING HOLDINGS LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No. 15-26-SLR **FILED UNDER SEAL CONFIDENTIAL INFORMATION** |
| MYLAN INC., AGILA SPECIALTIES PRIVATE LTD., and MYLAN PHARMACEUTICALS INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## [Description of Contents]

In addition, any document that is to be filed with the Court and that contains or discloses CONFIDENTIAL INFORMATION shall be marked "FILED UNDER SEAL" on its cover page. Material designated CONFIDENTIAL INFORMATION and filed under seal shall be maintained in such manner as provided for by the Court. However, the burden of proving that such document should be sealed shall at all times remain on the party that designated the document CONFIDENTIAL INFORMATION.

21. **Challenging Designations**. The acceptance by any party of material designated CONFIDENTIAL INFORMATION shall not constitute an admission or concession, or permit an inference that such material is, in fact, confidential. Any receiving party may at any time request that the designating party cancel or modify the CONFIDENTIAL INFORMATION designation with respect to any document, object or information. Such request shall be made to counsel for the designating party in writing, and shall particularly identify the designated CONFIDENTIAL INFORMATION that the receiving party contends is not confidential or not

CONFIDENTIAL and the reasons supporting its contention.  If the designating party does not agree to remove the CONFIDENTIAL INFORMATION designation within ten (10) business days after receipt of such a request, then the party contending that such documents or material are not confidential may request by motion that the Court remove such material from the restrictions of this Protective Order.  On such a motion, the party asserting confidentiality shall have the burden of proving that the material designated CONFIDENTIAL INFORMATION warrants protection under this Protective Order.

22.     **No Expansion of Federal Rules of Civil Procedure**. Nothing in this Protective Order shall be construed to be an implied admission or to affect or govern the scope of discovery in this Action, or to preclude any party from moving the Court for a further order pursuant to Fed. R. Civ. P. 26(c), or any other provision of the Federal Rules of Civil Procedure. Nothing contained in this Protective Order shall be construed to require production or disclosure of any CONFIDENTIAL INFORMATION deemed by counsel for the party possessing such material to be protected from disclosure by the attorney-client privilege or the attorney work- product immunity, or other privilege or immunity, so long as the withheld materials are identified in the manner required by the Federal Rules of Civil Procedure by the producing party. However, this Protective Order shall not prevent the parties from agreeing that certain categories of documents need not be identified, nor shall it prevent one or more parties from seeking relief from the Court if, *e.g.*, identification of individual documents would be unduly burdensome. This Protective Order shall not preclude any party from moving the Court for an order compelling production or disclosure of such material.

23.     **New parties to this Action.**  In the event additional parties join or are joined in this Action, they shall not have access to CONFIDENTIAL INFORMATION until the newly joined party or its counsel has executed and, at the request of any party, filed with the Court its

19

agreement to be fully bound by this Protective Order or an alternative protective order is agreed to by all parties and entered by the Court.

24.    **Miscellaneous**. This Protective Order shall not be construed to prevent any of the parties, or any THIRD PARTY, from applying to the Court for relief or further or additional protective orders, or from agreeing between or among themselves to modifications of this Protective Order, subject to the approval of the Court.  The Protective Order shall not preclude the parties from enforcing their rights against any THIRD PARTY not associated with this Action who is believed to be violating their rights.

25.    **Other Proceedings.** Any person or party subject to this order who may be subject to a subpoena, motion or court order in another case to disclose information that is designated by another party in this case as CONFIDENTIAL in this case shall promptly notify that other party of the subpoena, motion or court order so that it may have an opportunity to appear and be heard on whether such information should be disclosed.

26.    **Publicly Available Information**. This Protective Order shall not apply to any information of the parties which: (a) the producing or designating party or parties agree(s) should not be designated as CONFIDENTIAL INFORMATION; (b) the producing or designating party or parties agree(s), or the Court rules, is already public knowledge; (c) the producing or designating party or parties agree(s), or the Court rules, has become public knowledge other than as a result of disclosure by the receiving party, its employees or agents in violation of this Protective Order; or (d) the producing or designating party or parties agree(s), or the Court rules, has come or shall come into the receiving party's legitimate knowledge or possession independently of the producing party under conditions such that its use and/or public disclosure by the receiving party would not violate any obligation to an opposing party to this Action. The restrictions and obligations set forth herein shall not prohibit discussions of any

20

material designated CONFIDENTIAL INFORMATION with any person who already has or

obtains legitimate possession thereof.

27.    **Survival of Obligations under Protective Order**. With respect to any

CONFIDENTIAL INFORMATION, this Protective Order shall survive the final

termination of this Action to the extent the information in such material is not or does not

become known to the public and continues to be binding upon all persons to whom

CONFIDENTIAL INFORMATION is disclosed hereunder.  Upon final termination of

this Action, one outside litigation firm listed herein for each party may retain (a) one (1)

copy of all deposition transcripts and exhibits thereto, (b) one (1) copy of all trial

transcripts and trial exhibits, (c) one (1) copy of all pleadings and exhibits thereto, (d) one

(1) copy of all correspondence and exhibits thereto, and (e) any documents, things, copies

and samples to the extent they include or reflect the receiving attorney's work product.

Upon final termination of this Action, including all appeals, however, all other copies and

samples of material designated CONFIDENTIAL INFORMATION and any other summaries,

abstracts, excerpts, indices and descriptions of such material, and information derived from such

material that are recorded in any tangible form, shall be: (i) assembled and returned (except for

any that may be retained by the Court) to the producing party; or, alternatively, (ii) counsel for the

receiving party may certify in writing the destruction thereof.  Accordingly, upon final

termination of this Action, no one other than the one outside litigation firm listed herein per party

shall retain any copies or samples of any material designated CONFIDENTIAL

INFORMATION.  As to CONFIDENTIAL INFORMATION stored in computer databases or

backup tapes or disks, the receiving party shall either (1) delete all such CONFIDENTIAL

INFORMATION, (2) restrict access to such material with passwords, or (3) designate the

information CONFIDENTIAL in a manner reasonably calculated to prevent unauthorized access

to the CONFIDENTIAL INFORMATION.

28. **Waiver or Termination of Order.**  No part of the restrictions imposed by this Protective Order may be waived or terminated, except by written stipulation executed by counsel of record for each designating party, or by an Order of the Court for good cause shown.  The restrictions provided for herein shall not terminate upon the conclusion of this action, but shall continue until further Order of this Court.  The termination of employment of any person with access to any CONFIDENTIAL INFORMATION shall not relieve such person from the obligation of maintaining the confidentiality of such information.

29. **Modification of Order; Prior Agreements.**  This Protective Order may be modified, and any matter related to it may be resolved, by written stipulation of the parties without further Order of the Court.  This Protective Order supersedes any agreements between the parties regarding the confidentiality of particular information entered into before the date of this Protective Order.

30. **Section Captions.**  The title captions for each section of this Protective Order are for convenience only and are not intended to affect or alter the text of the sections or the substance of the Order.

31. **Days.**  All references to "days" in this Order shall be construed as calendar days, unless otherwise specifically indicated.

32. **Order Applicable Upon Filing with the Court.**  Upon filing this Protective Order with the Court, the Parties agree to treat it as "So Ordered," subject to any future modifications by agreement of the Parties or by the Court.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP          POTTER ANDERSON & CORROON LLP

*/s/ Maryellen Noreika*                                            */s/ Bindu A. Palapura*

_____          _____
Jack B. Blumenfeld (#1014)                            Richard L. Horwitz (#2246)
Maryellen Noreika (#3208)                             David E. Moore (#3983)
1201 North Market Street                               Bindu A. Palapura (#5370)
P.O. Box 1347                                                Hercules Plaza, 6th Floor
Wilmington, DE  19899                                  1313 N. Market Street
(302) 658-9200                                              Wilmington, DE 19801
jblumenfeld@mnat.com                               Tel: (302) 984-6000
mnoreika@mnat.com                                   rhorwitz@potteranderson.com
                                                                   dmoore@potteranderson.com
                                                                   bpalapura@potteranderson.com
*Attorneys for Plaintiffs*

                                                                   *Attorneys for Defendants*

August 12, 2015


   It is SO ORDERED this ___ day of _____, 2015.


                              _____
                              UNITED STATES DISTRICT COURT JUDGE

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PFIZER INC., WYETH LLC, PFIZER PHARMACEUTICALS LLC, PF PRISM C.V. and PFIZER MANUFACTURING HOLDINGS LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 15-26 (SLR) (SRF) |
| MYLAN INC., AGILA SPECIALTIES PRIVATE LTD., and MYLAN PHARMACEUTICALS INC., | ) ) ) ) | |
| Defendants. | ) ) | |

**UNDERTAKING OF** _____

I, _____, declare under penalty of perjury that:

1.     My present address is _____.

2.     My present employer is _____, and the

address of my present employer is _____.

3.     My present occupation is _____.

4.     My job and consulting history for the past three years is as follows

_____

_____

_____.

5.     My relationship to the parties in this action is as follows

_____

_____

_____.

2

6.      I have received a copy of the Protective Order in this Action.  I have carefully read and understand the provisions of the Protective Order.  Specifically, I understand that I am obligated, under order of the Court, to hold in confidence and not disclose the contents of anything marked CONFIDENTIAL to anyone other than the persons permitted by paragraph 13 of the Protective Order.  I further understand that I am not to disclose to anyone other than the persons permitted by paragraph 13 of the Protective Order any words, substances, copy, summary, abstract, excerpt, index, or description of any CONFIDENTIAL INFORMATION disclosed to me.

7.      I will comply with all provisions of the Protective Order and hereby submit to the jurisdiction of the United States District Court for the District of Delaware for the purpose of the enforcement of the Protective Order in this Action.

8.      I will return or destroy all CONFIDENTIAL INFORMATION that comes into my possession, and all documents and things that I have prepared relating thereto, to counsel for the party by whom I am employed or retained or from whom I received such material at the termination of this action or at any time when requested to do so.  I acknowledged that return or destruction of such materials shall not relieve me from any of the continuing obligations imposed upon me by the Protective Order.

9.      I understand that if I violate the provisions of the Protective Order, I will be subject to sanctions by the Court and that the parties, or either of them, may assert other remedies against me.  I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this Action.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Dated: _____          _____
                                                                              Signature

2